-IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARY JO HUDSON**[1] | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:06-cv-795** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **SUPREME ENTERPRISES, INC.,** | : | |
| *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on Plaintiff Ann H. Womer Benjamin's ("Plaintiff")

Motion to Remand.  Plaintiff is the Superintendent of the Ohio Department of Insurance, acting

in her official capacity as Liquidator of Credit General Insurance Company and Credit General

Indemnity (collectively, "Credit General").  For the reasons set forth herein, the Court **GRANTS**

Plaintiff's Motion to Remand.

### II.  BACKGROUND

#### A.  Facts

Credit General is a property and casualty insurance company domiciled in Ohio.

Between January 1, 1991 and December 31, 1997, Credit General issued insurance policies to

Odyssey Management Company, Inc. ( "Odyssey") providing Workers' Compensation and

---

[1] Mary Jo Hudson is the current Superintendent of the Ohio Department of Insurance.
She has succeeded Ann H. Womer Benjamin, the original plaintiff in this action.

Employers Liability coverage the ("Policies")[2].  Defendants Odyssey Services, Inc., Odyssey Services of Mississippi, Inc., Advantage Financial Services, Inc., Odyssey Management Co., Inc., Supreme Enterprises, Inc., First Odyssey Group, Inc., Odyssey Services II, Inc., and Odyssey Resource Management, Inc. (collectively, the "Additional Insured Defendants") were additional named insureds under one or more of the aforementioned Policies.  Although Odyssey and the additional named insureds are obligated under the Policies to reimburse Credit General for amounts within the deductible, Credit General remains at all times responsible for paying the full amount of all workers' compensation claims.

In addition to the insurance policies, Odyssey entered into Fee, Premium, Security, and Indemnity Agreements (hereinafter, the "Agreements") with Credit General.  Under the Agreements, Odyssey agreed to indemnify Credit General against all losses, damages, expenses, costs, fees, and disbursements that Credit General incurred under the Policies up to the specific per-occurrence deductible.  To secure its obligations to Credit General, Odyssey provided cash collateral.  As of July 30, 2006, the remaining un-applied balance of the collateral was $2,891,617.50.  Prior to the Liquidation Orders being entered, Credit General paid $195,602.00 within the deductibles of the policy, which Odyssey is contractually required to reimburse under the terms and conditions of the Policies and the Agreements.  Despite invoices sent to Odyssey on or about February 26, 2001 and a statement of account sent to Odyssey on July 21, 2006,

---

[2] Defendant Supreme Enterprises is the parent of Odyssey, as well as First Odyssey Group, Inc., Odyssey Resource Management II, Inc., Odyssey Resource Management, Inc., Laxus Holding, Inc., Odyssey Services of Mississippi, Inc., Odyssey Resource Management of Mississippi, Inc., Odyssey Resource Management III, Inc., Laxus Group of Alabama, Laxus Group of Mississippi, Inc., and Laxus Group of Oklahoma, Inc. (collectively, with Supreme Enterprises, the "Note Defendants").

-2-

however, Odyssey and the Additional Named Insured Defendants have failed to repay the sums advanced by Credit General within the Policies' deductibles.

After Liquidation, Credit General paid an additional $3,593,294.33 within the deductibles of the Policies, which Credit General is contractually entitled to have reimbursed under the terms and conditions of the Policies and the Agreements. On behalf of Credit General, its policyholders, and other creditors, the Liquidator is entitled to collect and retain post-Liquidation deductible reimbursement. Moreover, like all other assets of Credit General, the contractual rights arising from the Policies and the Agreements belong to the Liquidator.

Pursuant to Franklin County Court Orders, Plaintiff serves as Liquidator of Credit General. In this capacity, in accordance with OHIO REV. CODE. § 3903.21, Plaintiff is vested with title to all property, contracts, and rights of Credit General, and is thereby charged with collecting amounts owed to Credit General. On July 31, 2006, Plaintiff demanded payment from Odyssey for the outstanding amounts of post-Liquidation deductible reimbursement. Odyssey and the Additional Insured Defendants subsequently failed to repay Credit General. After having credited the remaining cash collateral toward the Odyssey's and the Additional Insured Defendants' deductible reimbursement obligations, the remaining balance totaled $897,279.35, plus interest.

In addition, the Note Defendants executed and delivered to Credit General's parent, PRS Insurance Group, Inc., a Fifth Amended and Restated Promissory Note (the "Promissory Note"). Thereafter, PRS Insurance Group, Inc. assigned all its rights, title, and interest to Credit General. Thus, by virtue of this assignment, Plaintiff is currently the holder of the Promissory Note and all amounts owing under the note as of September 28, 2000.

-3-

Plaintiff now alleges that the Note Defendants are in default of this Promissory Note. Moreover, to secure Note Defendants' Promissory Note, Defendants David Williams, Sharon Williams, and Patricia Fry (collectively, the "Guarantors") executed and delivered a Guaranty to PRS Insurance Group, Inc.  This Guaranty provides that the Guarantors guarantee the payment of the Promissory Note to Credit General (by virtue of the aforementioned assignment).  Thus, the Guarantors are legally liable for the payment of the Promissory Note.

The Liquidation Orders and OHIO REV. CODE § 3903.21(A)(6) direct the Liquidator to collect all of Credit General's assets.  Pursuant to her rights under the Liquidation Orders and Ohio Law, the Plaintiff Liquidator now seeks to enforce Odyssey's obligations to reimburse Credit General for the deductibles advanced under the Policies, as well as the Note Defendants' obligations under the Promissory Note, and the obligations of the Guarantors under the Guaranty.

## B.  Procedural History

On August 14, 2006, Plaintiff Benjamin filed her initial complaint (the "Complaint"), consisting of six counts.  Plaintiff asserts Counts One, Two, Three, and Four of the Complaint against Odyssey, and Counts One, Three, and Four against the Odyssey and the Additional Insured Defendants.  In Count One, Plaintiff claims Odyssey and the Additional Insured Defendants materially breached their obligations under the Policies by failing and refusing timely to reimburse Credit General.  In Count Two, Plaintiff asserts that Odyssey materially breached its obligations under the Agreements by failing and refusing to timely indemnify Credit General.  In Count Three, in the alternative to Counts One and Two, Plaintiff asserts that Odyssey and the Additional Insured Defendants were unjustly enriched when they knowingly

received, retained, and failed to repay a benefit conferred non-gratuitously by Credit General.  In Count Four, Plaintiff asserts that she, as Liquidator, is entitled to judgment declaring that Odyssey and the Additional Insured Defendants, under the Policies and the Agreements, are responsible for reimbursing the Credit General liquidation estate for future loss and expense payments advanced under the deductibles of the Policies on Credit General's behalf.

Plaintiff requests various forms of relief in her Complaint with respect to these claims. In general, Plaintiff requests this Court to enter judgment against Defendants in the amount of $897,279.35, which represents the amount owed to Plaintiff from Defendants (after applying the remaining balance of the collateral), plus interest.  In addition, Plaintiff requests this Court to enter judgment against Defendants Odyssey and the Additional Insured Defendants declaring that Odyssey and the Additional Insured Defendants, under the Policies and the Agreements, are responsible for reimbursing the Credit General liquidation estate for future loss and expense payments advanced under the deductibles of the Policies on Credit General's behalf.

Additionally, in Count Five, Plaintiff claims that the Note Defendants have breached the Promissory Note by failing to make the payments required under the Promissory Note when due. In Count Six, Plaintiff claims that, by virtue of the Note Defendants' alleged default on the Promissory Note, Defendants David Williams, Sharon Williams, and Patricia Fry are jointly and severally liable to the Liquidator for the balance of the Promissory Note.

With respect to Count Five, Plaintiff seeks judgment against the Note Defendants, jointly and severally, in the amount of $2,701,934.10 plus interest accruing at a rate of 12% per annum, and costs, including reasonable attorneys' fees.  With respect to Count Six, Plaintiff seeks judgment against David Williams, Sharon Williams, and Patricia Fry, jointly and severally, in

the amount of $2,701,934.10 plus interest accruing at a rate of 12% per annum, and costs, including reasonable attorneys' fees.

Plaintiff originally filed this action in Franklin County Common Pleas Court on August 14, 2006.  All Defendants removed this action to this Court in accordance with 29 U.S.C. § 1446 on September 19, 2006.  On October 19, 2006, Plaintiff filed a Motion to Remand this action to state court.  Defendants responded on November 11, 2006, and Plaintiff replied to Defendants' Response on November 20, 2006.[3]  Accordingly, Plaintiff's Motion is now ripe for this Court's review.

### III.  DISCUSSION

### A.  Plaintiff's Motion to Remand

Plaintiff's Motion to Remand is based upon the assertion that, by virtue of the McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq*., the statutory authority governing removal of the instant action, *i.e.* 28 U.S.C. §§ 1332, 1441, is "reverse pre-empted" by the Ohio statutes pursuant to which Plaintiff brings this action.  Plaintiff contends that R.C. Chapter 3903 (the "Liquidation Act") sets forth a comprehensive statutory scheme for the dissolution of insolvent Ohio insurers and that the Franklin County Court of Common Pleas has exclusive jurisdiction over the proceedings at bar.  Defendants oppose remand and maintain that federal courts have the authority to entertain diversity actions, even those involving the liquidation of insurers.

---

[3] It is at this juncture noteworthy to mention that Defendants David Williams, Sharon Williams, and Patricia Fry filed a Motion to Dismiss for Lack of Personal Jurisdiction on January 16, 2007.  Additionally, Defendants Odyssey Services, Inc., Odyssey Services II, Inc., and Advantage Financial Services, Inc. did likewise.  Plaintiff timely responded to both Motions, and these named Defendants likewise replied.  In light of this Order, however, it is unnecessary for the Court to address these motions.

### 1.  The McCarran-Ferguson Act

Congress enacted the McCarran-Ferguson Act in response to the United States Supreme Court's decision in *United States v. South-Eastern Underwriters Assn.*, 322 U.S. 533 (1944).  In that case, the Supreme Court held that an insurance company which conducted a large portion of its business across state lines was engaged in interstate commerce and therefore subject to federal regulations.  *See Id.*  Congress perceived this decision as a threat to the power of the states to regulate the insurance industry, and therefore passed the McCarran-Ferguson Act as a means to restore state supremacy in this area of regulation.  *See United States Dept. of the Treasury v. Fabe*, 508 U.S. 491, 499 (1993).

Section 2(b) of the McCarran-Ferguson Act provides:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b).

It is undisputed that the federal removal statutes at issue, 28 U.S.C. §§ 1332 and 1441, do not "specifically relate to the business of insurance."  Thus, by the terms of the McCarran-Ferguson Act, this Court must determine whether the Ohio Law at issue was enacted "for the purpose of regulating the business of insurance," and whether the federal laws purporting to grant this Court jurisdiction over this action operate to "invalidate, impair, or supersede" the Ohio law.

### a.  "The Purpose of Regulating the Business of Insurance."

The Court will first consider whether the Ohio law at issue was enacted for the "purpose of regulating the business of insurance."  Plaintiff's claims are based, in part, upon R.C. §

3903.04(E) ("All actions authorized in sections 3903.01 to 3903.59 of the Revised Code shall be brought in the court of common pleas of Franklin county."); § 3903.21(A)(6) ("The liquidator may . . . [c]ollect all debts and moneys due and claims belonging to the insurer . . . ."); and § 3903.33(B) ("An insured shall be obligated to pay any unpaid earned premium due the insurer at the time of the declaration of insolvency . . ."). In determining whether these statutes were enacted for the purpose of regulating the business of insurance, the Court must consider the statutes against the backdrop against the backdrop of *SEC v. National Securities, Inc.*, 393 U.S. 453 (1969) and *United States v. Fabe*, 508 U.S. 491 (1993). In *National Securities,* the Court stated that the "business of insurance" deals with the relationship between the insurance company and the policy holder; therefore, state statutes "aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'" *Id.* at 460.

The Supreme Court elaborated on this theory in *United States v. Fabe*, 508 U.S. 491 (1993). In *Fabe*, a liquidator appointed under Ohio law for a bankrupt insurance company brought a declaratory judgment action to establish priority of claims asserted by United States as obligee on various surety bonds. The Supreme Court held that a state statute regulates the business of insurance "to the extent that it protects policyholders. . . ." *Id.* at 508. At issue in *Fabe* was a conflict between R.C. § 3903.42, which confers fifth priority on a debtor's assets to the United States in bankruptcy proceedings, and 31 U.S.C. § 3713, which confers first priority to the United States in such proceedings. The Court concluded that, to the extent that § 3903.42 protects policyholders, the McCarran-Ferguson Act saved it from preemption by the federal statute. The Court further stated that the "broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of

-8-

adjusting, managing, or controlling the business of insurance.'" *Id.* at 505 (citation omitted). Ultimately, the Court held that, to the extent it protects policyholders, the Ohio priority statute was enacted for the purpose of regulating the business of insurance; the statute was intended to enforce insurance contracts by ensuring payment of policyholders' claims despite the insurer's intervening bankruptcy.  The Supreme Court concluded that the statute was "integrally related to the performance of insurance contracts" and was "'aimed at protecting or regulating' the performance" of insurance contracts.  *See Id.* at 504-05 *(*citation omitted).

In *International Ins. Co. v. Duryee*, 96 F.3d 837 (6th Cir. 1996), the Sixth Circuit applied the above standards to R.C. § 3927.05, which prohibited out-of-state insurers from removing cases from state to federal court.  The Sixth Circuit concluded that, while according to *Fabe*, the category of laws enacted for the purpose of regulating the business of insurance is arguably broad, § 3927.05 "neither regulates the policy relationship nor affects an insured's right to obtain payment on a policy."  *International Ins. Co.* at 840.  This law, therefore, was not enacted for the purpose of regulating the business of insurance and, under the McCarran-Ferguson Act, did not preempt the federal removal statute.

Plaintiff relies upon this Court's holding in *Covington v. Sun Life of Canada (U.S.) Holdings, Inc.*, No. C-2-00-069, 2000 WL 33964592 (S.D. Ohio May 17, 2000) for the proposition that the Liquidation Act regulates the business of insurance.  In *Sun Life*, the court reasoned that the Liquidation Act was aimed at protecting policy holders to the extent that it enhances "efficiency and economy of liquidation," and "minimize[s] legal uncertainty and litigation."  *Sun Life*, at *2 (*quoting* R.C. § 3903.02(D)).  Thus, in *Sunlife*, the court specifically concluded that Ohio's Liquidation Act, the law in question here, was enacted for the purpose of

-9-

increasing the likelihood of payment of claims, thus protecting policy holders, and therefore regulating the business of insurance under the Supreme Court's analysis in *Fabe*. *See also Covington v. Carvill America, Inc.,* Case No. C2-01-105, Slip Op. at 7 (S.D. Ohio 2001) (holding that the Liquidation Act "was adopted to protect the interest of insureds," and thus regulated the business of insurance); *Duryee v. Griffen*, Case No. 2:98-cv-913, Slip Op. at 9 (S.D. Ohio 1999) (Marbley, J.): (holding that the Liquidation Act is "aimed at protecting policyholders by increasing the likelihood of payment of their claims despite the insurer's insolvency," and thus regulates the business of insurance).

Conversely, Defendants rely heavily upon *AmSouth Bank v. Dale*, 386 F.3d. 763 (6th Cir. 2004), a diversity action in which the Sixth Circuit concluded that the McCarran-Ferguson Act did not reverse-preempt declaratory judgment actions against insolvent insurance companies. The court based its reasoning on its determination that the insolvent insurer was a plaintiff in an ordinary contract or tort action, and also the fact that the threatened declaratory judgment actions against the insurance companies had only "an attenuated connection to regulating the business of insurance." *AmSouth*, 386 F.3d at 783. Based on this reasoning, combined with the simple fact that *AmSouth* succeeded much of this Court's prior authority to the contrary, Defendants assert that *AmSouth* stands for the proposition that the liquidation proceedings sub judice have only "an attenuated connection to regulating the business of insurance," and are thus immune from McCarran-Ferguson preemption.

*AmSouth*, however, is inapposite. *Credit General Insurance Company v. Insurance Services Group, Inc.*, Case No. 2:05-cv-148 (S.D. Ohio), a liquidation action with facts remarkably similar to the instant action, bears out *AmSouth's* inapplicability. In *Insurance*

-10-

*Services,* the court stated that:

> While *AmSouth* calls into question the continued validity of the *Sun Life* line of cases, it is distinguishable. First, this case is not a declaratory judgment action. Rather, it is a suit by the liquidator to recover premiums and commissions owed to the insolvent insurance companies. Second, the collection of these assets by the Liquidator would directly advance the interest of the policyholders. Third, this action derives from the Ohio statutory scheme. This action is not a garden variety common law damages suit tangentially related to the Liquidation Act; all of the claims advanced are either pleaded under or derived from Title 39 of the Ohio Revised Code. Moreover, the claims also arise from the liquidation orders issued by the Franklin County Court of Common Pleas which were issued pursuant to liquidation in accordance with Chapter 3903. Therefore, the claims arise from Ohio Rev. Code §§ 3903.33 and 3093.21. This court's exercise of jurisdiction would directly interfere with Ohio's complex statutory scheme. Finally, the *AmSouth* case did not involve the Ohio statutory scheme. In fact, the court's discussion of McCarran-Ferguson did not describe or even reference state statutory schemes. Although cases construing Ohio's statutory scheme were cited, Ohio's statutory scheme was not at issue in *AmSouth*. Ohio's Liquidation Act was enacted to protect policyholders, and all of the claims asserted against Defendants derive from the Act. The claims in *AmSouth* were common law negligence claims, which the court ultimately found were too attenuated to the state's laws regulating the business of insurance. Therefore [this Court] find[s] that *AmSouth* is not controlling.

*Insurance Services Group, Inc.* Slip Op. at 13-14.

The case sub judice, just like *Insurance Services*, is not a declaratory judgment action.

Additionally, just like *Insurance Services*, the instant case involves the Ohio statutory scheme.

Thus, *Amsouth* is not applicable here. Moreover, as in *Carvill*, this Court finds that the

Liquidation Act was designed to protect policyholders. Therefore, this Court concludes that

R.C. §§ 3903.04(E), 3903.21(A)(6), and 3903.33(B) were enacted for the purpose of regulating

the business of insurance.

### b. "No Act of Congress Shall be Construed to Invalidate, Impair, or Supersede Any Law Enacted by Any State"

The final question, for purposes of application of the McCarran-Ferguson Act to this case, is whether the federal removal statute is an act of Congress that would "invalidate, impair, or supersede" the state laws at issue.  R.C. § 3903.04(E) provides that all actions authorized under the Liquidation Act "shall be brought in the court of common pleas of Franklin County." The federal removal statute would have the effect of invalidating or superseding this provision, and would impair the operation of the other statutes at issue in this case.

Relying on *Humana v. Forsyth*, 525 U.S. 299, (1999), Defendants contend that the federal removal statutes neither "invalidate, impair, or supersede" Ohio law, and thus the McCarran-Ferguson Act does not affect the case at bar.  *Humana* states, "when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." 525 U.S. at 308.  While Defendants's quotation is correct, its application is misplaced.  In this case, the application of federal law would  interfere with the State's administrative regime, thus precluding the application of federal law.  If this court were to apply the removal statute, it would deprive the state court of its jurisdiction.  Thus, this Court holds that the federal removal statute "invalidates, impairs, or supersedes" the state laws at issue in this case.

Accordingly, because Ohio's Liquidation Act regulates the business of insurance, and removal to this Court would "invalidate, impair, or supersede" this state law, this Court concludes that the McCarran-Ferguson Act applies to the statutory claims at issue in this action, and thus these claims must be remanded to the state court.

## B.  Attorney's Fees

Plaintiff also asks for reasonable costs, expenses, and attorney's fees incurred as a result

of Defendants's improper removal.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal."  Although an award of fees is not automatic, it is within the discretion of the Court to award such fees when it is "fair and equitable under all the circumstances."  *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993).  Moreover, in deciding whether to award fees, "[a] threshold determination of bad faith, improper purpose, or vexations or wanton conduct [is] not necessary."  *Id.* at 240.

In *Ahearn v. Charter Township of Bloomfield,* the Sixth Circuit stated:

> The majority of § 1447(c) attorney fees cases involve situations in which the district court *has awarded* such fees.  Those cases that involve a district court's *denial* of fees or that reverse an award of fees are much less numerous.  Nonetheless, those cases focus on the objective "propriety" of the removal attempt and set forth the following standard: an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was "fairly supportable." . . . or where there has not been at least *some* finding of fault with the defendant's decision to remove . . . .  By reverse implication, a court abuses its discretion by refusing to award fees where the defendant's argument for removal was devoid of even fair support.

No. 97-1187, 1998 WL 384558, at *2 (6th Cir. June 18, 1998) (citations omitted).

In addition to these Sixth Circuit opinions, the Supreme Court stated, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 126 S. Ct. 707, 711 (2005).  Defendants focus their argument on their "objectively reasonable basis for seeking removal."

First, Defendants argue that they have demonstrated an "objectively reasonable" basis for their removal by setting forth a recent Sixth Circuit case "on point."  Second, Defendants assert

the "unique issue . . . that some of the Defendants are not subject to remand even under Plaintiff's analysis of the law."  As previously demonstrated, the recent Sixth Circuit case "on point" is not controlling.  Moreover, this issue is not unique because, as set forth above, all Defendants are subject to remand under this Court's interpretation of the McCarran-Ferguson Act.  *See Insurance Services*, Slip Op. at 13-14 (all claims derived from Liquidation Act are subject to removal).  Therefore, under these circumstances,[4] this Court finds no "objectively reasonable" basis for Defendants' removal.

Although the Court does not believe that Defendants removed this action in bad faith, the Court nevertheless concludes that Plaintiff is entitled to the reasonable costs, expenses, and attorney fees incurred as a result of improper removal.  There is substantial case law finding that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act.  Because Defendants's removal of this case was not fairly supportable, and thus lacked an objectively reasonable basis, the Court concludes that an award of costs and fees is fair and equitable under the circumstances.  Plainitiff is directed to submit its claimed fees and costs within fourteen days of the date of this Order.

### IV. CONCLUSION

Pursuant to the McCarran-Ferguson Act, this Court does not have jurisdiction over this matter.  Thus, Plaintiff's Motion to Remand is **GRANTED**.  This case is remanded to the

---

[4] Additionally, Plaintiff supplied Defendants with a copy of the *Insurance Services* decision that clearly set forth this Court's ruling that *AmSouth* is not controlling.  Moreover, Plaintiff went out of her way to supply other Southern District of Ohio cases which have repeatedly held that federal jurisdiction is reverse pre-empted by Ohio's Liquidation Act.  *See Plaintiff's Reply in Support of Motion to Remand* at 9.  Defendants had an opportunity to acquaint themselves with this law.  Nevertheless, Defendants insisted upon  ignoring these words of advice, and removed the action (in contravention of the law provided to them by Plaintiff).

-14-

Franklin County Court.  Additionally, Plaintiff is directed to submit its claimed fees and costs

within fourteen days of the date of this Order.

      **IT IS SO ORDERED.**


           **s/Algenon L. Marbley**           
           **ALGENON L. MARBLEY**
           **UNITED STATES DISTRICT JUDGE**


**DATED: August 9, 2007**